WILL OF LOTT: BARDENWERPER and another, Appellants,
vs. SMITH and others, Respondents.

*May 5—June 20, 1927.*

*Charities: Bequest to Free Will Baptist Church: Ownership of
corpus on dissolution of church: Power of legislature to de-
clare.*

1. In view of sec. 13 of art. XIV of the state constitution, pro-
   viding that the common law remain in force until changed by
   the legislature, that body succeeds to the prerogatives of the
   crown, which under the common law could dispose of chari-
   table trusts where the express purpose of the trust has failed
   but the general charitable intent remains.   The doctrine of
   *cy pres* has been rejected in this state, however, so far as the
   exercise by the court of its judicial power is concerned.
   pp. 412, 414.
2. Where testatrix bequeathed the residue of her estate for the
   benefit of the Free Will Baptist Church in a certain village,
   directing the revenue therefrom to be applied on the minister's
   salary, but without provision for the disposition of the prop-
   erty in case of the failure of the trust, and no reversionary
   interest was expressed in the will or could be implied in favor
   of her heirs, the corpus of the trust, under secs. 1–4 of
   ch. 64 of the Laws of 1907, became the property of the Wis-
   consin Baptist State Convention.   p. 413.
3. Said ch. 64, Laws of 1907, is valid.   p. 412.

APPEAL from an order of the county court of Fond du Lac
county: A. E. RICHTER, Judge.   *Reversed, with directions.*

This is an appeal from an order allowing the accounts of
the trustee of a testamentary trust, and directing payment of
the residue of the trust fund to the heirs of the deceased.

Mary A. Lott died early in 1915, leaving a will.   The will
was executed in 1909, and contained a codicil executed in
1915, shortly before her death.   The seventh clause of the
will reads as follows:

"Seventh.   All the rest, residue, and remainder of my
estate, both real and personal, I give, devise, and bequeath
for the benefit of the Free Will Baptist Church in the village

of Oakfield, to wit: I hereby direct that the same shall be converted into money and deposited in the Bank of Oakfield, at Oakfield, Wisconsin, on interest, with instructions to pay one hundred dollars per annum on the minister's salary. The interest to be added to the principal each year and the donation of one hundred dollars per annum be made on the minister's salary until the entire sum is exhausted."

The will was duly admitted to probate. In August, 1918, the estate of the deceased was settled and judgment entered distributing the same, whereby F. J. Bristol, trustee of the trust estate of the said Mary A. Lott, deceased, was awarded the sum of $2,000, in trust, to be executed according to the terms of said will.

Pursuant to ch. 64, Laws of Wisconsin for 1907, in 1926 the circuit court for Fond du Lac county declared the Free Will Baptist Church of Oakfield to be dissolved and extinct. Thereafter the *Wisconsin Baptist State Convention,* pursuant to the provisions of said chapter, made application for an order terminating said testamentary trust and directing the trustee thereof to pay over the residue of said trust fund to said *Wisconsin Baptist State Convention.*

The trial court found that the purposes of the trust had failed, and directed distribution of the trust funds among the heirs of the testator.

From such order the *Wisconsin Baptist State Convention* appeals and makes claim that the court erred in refusing to direct payment of the trust fund to it.

The cause was submitted for the appellants on the briefs of *Hoyt, Bender, McIntyre & Hoyt,* attorneys, and *Werner J. Trimborn,* of counsel, all of Milwaukee, and for the respondents on the brief of *L. E. Lurvey* and *J. M. Gooding,* both of Fond du Lac.

CROWNHART, J. The statutes involved on this appeal are printed in the margin on pages 411 and 412.[1] The testator, Mary A. Lott, by her will devised and bequeathed, for the

benefit of the Free Will Baptist Church in the village of Oakfield, all the residue of her estate, not otherwise disposed of, in the following language:

"Seventh. All the rest, residue, and remainder of my estate, both real and personal, I give, devise, and bequeath for the benefit of the Free Will Baptist Church in the village of Oakfield, to wit: I hereby direct that the same shall be converted into money and deposited in the Bank of Oakfield, at Oakfield, Wisconsin, on interest, with instructions to pay one hundred dollars per annum on the minister's salary. The interest to be added to the principal each year and the donation of one hundred dollars per annum be made on the minister's salary until the entire sum is exhausted."

[1] "Section 1. All property of any kind belonging to, or held in trust for any Baptist church, or Baptist church and society, or Baptist society, organized under the laws of this state, that has become or shall become extinct by death of all its members or otherwise, shall vest in and become the property of the Wisconsin Baptist State Convention, a religious incorporation engaged in religious missionary work, and in fostering weak Baptist churches in this state, and organized under chapter 221 of the Laws of Wisconsin for 1852.

"Section 2. Any Baptist church, or Baptist church and society or Baptist society, in this state, which has ceased, or failed to maintain religious worship, or services, or to use its property for religious worship or services, according to the tenets, usages and customs of Baptist churches in this state, for the space of two consecutive years immediately prior thereto or whose membership has so diminished in numbers, or in financial strength as to render it impossible or impracticable for such church, or church and society, or society, to maintain religious worship or services, or to protect its property from exposure to waste and dilapidation, or to fulfil the purpose for which it was incorporated, may by an order of the circuit court of the county where such property is located be declared extinct or dissolved, and the property of such church, or church and society, or society, or property which may be held in trust for such church, or for such church and such society or such society, be transferred to, and the title and possession thereof, vested in the said Wisconsin Baptist State Convention.

"Section 3. An application for such an order and disposition of property may be made by any member or officer of the said Wisconsin Baptist State Convention, or by any member of such church, or church and society, or society, when duly authorized thereto by the executive committee of the board of managers of said Wisconsin Baptist State Convention, upon a verified petition setting forth the facts authorizing such order and disposition of property. Upon

The property bequeathed and devised was converted by the trustee into cash, and the fund in trust amounted to some $2,000.    Up to the time of the trial of the case the principal remained intact, the interest being sufficient to carry out the trust.    The trust was properly executed until the time when the Free Will Baptist Church of Oakfield ceased to exist, after which time the *Wisconsin Baptist State Convention* applied to the county court to have the residue of said trust fund paid over to it.    No question is raised by the appellant as to the constitutionality of ch. 64, Laws of 1907, and we think the statute is valid.

The Wisconsin constitution provides that the common law

the presentation of such petition to the circuit court of the proper county, such court may proceed in a summary manner after such notice as the court may prescribe to inquire into the merits of such application; and if upon examination by the court, it shall satis-' factorily appear, that making of the order and disposition of the property applied for, is necessary or proper for any of the causes mentioned in section 2 of this act, such court shall make a final order, declaring such church, or church and society, or society, extinct, or dissolving the same, and transferring any property and the title and possession thereof, which may belong to such church, or church and society, or society, or held in trust for such church, or church and society, or society, and vest the same in the said Wisconsin Baptist State Convention; it being the intent and purpose of this act, to preserve to the Baptist denomination of this state all property owned by or held in trust, for any such church, or church and society, or society, for religious uses.   This act shall not affect reversionary interests of any person or persons, in said property, or any valid legal liens of creditors thereon.

"Section 4. Section 1, chapter 253, Laws of 1885, entitled 'An act to amend chapter 221, of the Private and Local Laws of 1852,' is amended to read, to wit: All persons who are now, or hereafter may become members of the Wisconsin Baptist State Convention, shall be and hereby are ordained, constituted and declared to be a body politic and corporate under the name and style of the Wisconsin Baptist State Convention, and by that name they and their successors shall be known in law, and shall be capable of suing and being sued, of pleading and being impleaded, of answering and being answered unto, of defending and being defended, in all suits, complaints, matters, causes, courts and places whatever, both in law and equity, of acquiring by purchase, gift or devise, or otherwise, or of holding or conveying any real, personal, or mixed property, necessary, proper or expedient for the object of this incorporation."   Ch. 64, Laws of 1907.

shall remain in force in Wisconsin until changed by the legis-
lature. At the common law, under the English government,
the king had power to dispose of charitable trusts where the
express purpose of the trust had failed but the general chari-
table intent remained, and the courts have held that under
our system of government the legislature succeeds to the
prerogatives of the crown. *Mormon Church v. U. S.* 136
U. S. 1, 10 Sup. Ct. 792, 34 Lawy. Ed. 478; *Ekern v.
McGovern,* 154 Wis. 157, 142 N. W. 595. This being so,
we are here to consider the purposes and intent of the testa-
tor as provided in the seventh clause of her will, and the
meaning of ch. 64, Laws of 1907, as applied to this situation.

It seems reasonably clear that the testator, in devising and
bequeathing certain of her property for the benefit of the
Free Will Baptist Church of the village of Oakfield, created
a trust whereby the trustee held, for the use and benefit of
such church, the property in question. There is nothing in
the will which provides for disposition of the property in
case of failure of the trust.

Ch. 64, Laws of 1907, provided:

"All property of any kind belonging to, or held in trust for
any Baptist church, or Baptist church and society, or Baptist
society, organized under the laws of this state, that has be-
come or shall become extinct by death of all its members or
otherwise, shall vest in and become the property of the Wis-
consin Baptist State Convention."

And it further declared its intent, to wit:

"It being the intent and purpose of this act, to preserve to
the Baptist denomination of this state all property owned by
or held in trust, for any such church, or church and society,
or society, for religious uses. This act shall not affect re-
versionary interests of any person or persons, in said prop-
erty, or any valid legal liens of creditors thereon."

From the provisions of the law quoted it is plain that the
legislature intended what in plain words it expressed, that is,
that "all property of any kind belonging to, or held in trust

for any Baptist church . . . organized under the laws of this state, that has become or shall become extinct by death of all its members or otherwise, shall vest in and become the property of the *Wisconsin Baptist State Convention*," unless it may be said that the heirs of Mary A. Lott have a reversionary interest in said property, within the meaning of such act. No reversionary interest is expressed in the will in favor of such heirs, and if they had any it must be an implied reversionary interest. Nothing appears in the will to indicate any such implied reversion. On the contrary, such statute was in existence when the testator made her will, and she is presumed to have known the law; hence it is reasonable to infer that the testator intended that in case the express trust should fail, the statute would apply and the church to which she was attached would have the benefit of the trust. This would seem to most nearly carry out the will of the testator and the intent of the legislature. It has been held that no implied reversion exists under the law of this state. *Maxcy v. Oshkosh,* 144 Wis. 238, 128 N. W. 899, 1138.

Considerable discussion is had of the doctrine of *cy pres* in the briefs of counsel. It is admitted, however, that this court has refused to follow the doctrine in the exercise of its judicial powers. The doctrine as here considered is interesting only in disclosing its origin and the power of the crown which has descended to the legislature.

It follows that the order of the county court must be reversed.

*By the Court.*—The order of the county court is reversed, with directions to enter an order according to this opinion.